**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| US FOODS, INC.,<br><br>    *Plaintiff*,<br><br>v.<br><br>SKYLINE HEALTH CARE, LLC, et al.,<br><br>    *Defendants*. | Civil Action No. 18-15414<br><br>OPINION |

**ARLEO,** U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> J<small>UDGE</small>

**THIS MATTER** comes before the Court upon application by Plaintiff US Foods, Inc. ("US Foods" or "Plaintiff") for entry of default judgment against Defendants Skyline Health Care, LLC ("Skyline") and BuySkyline LLC ("BuySkyline"),[1] pursuant to Federal Rule of Civil

---

[1] The Motion also seeks a default judgment against thirty eight of Skyline's affiliated health care facilities (collectively, the "Affiliated Facilities" and, with Skyline and BuySkyline, "Defendants"): Atlantic Care and Rehabilitation Center, LLC ("Atlantic"); Auburndale Oaks Care and Rehabilitation Center, LLC ("Auburndale"); Bella Vista Care and Rehabilitation Center, LLC ("Bella Vista"); Black Hills Care and Rehabilitation Center, LLC ("Black Hills"); Chase County Care and Rehabilitation Center, LLC ("Chase County"); Clark Care and Rehabilitation Center, LLC ("Clark Care"); Covington Care and Rehabilitation Center, LLC ("Covington"); Downs Care and Rehabilitation Center, LLC ("Downs"); Edwardsville Care and Rehabilitation Center, LLC ("Edwardsville"); El Dorado Care and Rehabilitation Center, LLC ("El Dorado"); Eskridge Care and Rehabilitation Center, LLC ("Eskridge"); Fort Smith, LLC ("Fort Smith"); Groton Care and Rehabilitation Center, LLC ("Groton"); Ipswich Care and Rehabilitation Center, LLC ("Ipswich"); Kaw River Care and Rehabilitation Center, LLC ("Kaw River"); Lake Norden Care and Rehabilitation Center, LLC ("Lake Norden"); Lansing Care & Rehabilitation Center, LLC ("Lansing"); Laurel Pointe Care and Rehabilitation Center, LLC ("Laurel Pointe"); Madison Care and Rehabilitation Center, LLC ("Madison"); Meadowbrook Care and Rehabilitation Center, LLC ("Meadowbrook"); Milbank Care and Rehabilitation Center, LLC ("Milbank"); Mobridge Care and Rehabilitation Center, LLC ("Mobridge"); Neodesha Care and Rehabilitation Center, LLC ("Neodesha"); Park Place Care and Rehabilitation Center, LLC ("Park Place"); Parkway Care and Rehabilitation Center, LLC ("Parkway"); Pierre Care Rehabilitation Center, LLC ("Pierre"); Pittsburg Care and Rehabilitation Center, LLC ("Pittsburg"); Prairie Hills Care and Rehabilitation Center, LLC ("Prairie Hills"); Reading Care and Rehabilitation Center, LLC ("Reading"); Redfield Care and Rehabilitation Center, LLC ("Redfield"); Rosemont Care and Rehabilitation Center, LLC ("Rosemont"); Salem Care and Rehabilitation Center, LLC ("Salem"); Spring Hill Care and Rehabilitation Center, LLC ("Spring Hill"); Stenton Care and Rehabilitation Center, LLC ("Stenton"); Wakefield Care and Rehabilitation Center, LLC ("Wakefield"); Watertown Care and Rehabilitation Center, LLC ("Watertown"); Wellington Care and Rehabilitation Center, LLC ("Wellington"); Wichita Care and Rehabilitation Center, LLC ("Wichita"); Wilson Care and Rehabilitation Center, LLC ("Wilson"). ECF No. 106.

1

Procedure 55(b)(2).  ECF No. 106.  For the reasons set forth herein, the Motion is **GRANTED in part** and **DENIED in part**.

I.   **BACKGROUND**[2]

This action arises from Defendants' allegedly unpaid invoices and purchase agreements for perishable agricultural commodities and other goods delivered by Plaintiff. Compl. ¶¶ 76, 79-83, ECF No. 1.

Plaintiff is a food-service distributor for "restaurants, healthcare and hospitality facilities, government operations, and educational institutions across the" United States. Id. ¶ 1.  On or about August 2, 2011, Plaintiff began supplying food products to the Affiliated Facilities, which were controlled by Skyline and BuySkyline.  Id. ¶¶ 2-4, 76.  The Affiliated Facilities executed a Customer Account Application and/or accepted invoices in connection with these transactions. Id. ¶ 77 & Ex. A (the "Customer Account Applications").  Skyline agreed that it was jointly and severally liable for the goods Plaintiff supplied to the Affiliated Facilities. Id. ¶ 81.

Skyline and BuySkyline appear to have gone out of business sometime in 2018, at which point the Affiliated Facilities were either placed into receivership, "had emergency managers installed by the state in which they operate," or were "taken over by third parties."  Id. ¶¶ 84-87. Plaintiff has not been paid for nearly $500,000 in goods it delivered to the Affiliated Facilities pursuant to the Customer Account Applications and associated invoices.  Id. ¶ 83.  On July 5, 2018, Plaintiff mailed Skyline a formal demand for payment, to which Skyline never responded. Id. ¶ 88.

---

[2] Because Defendants have failed to file an answer or otherwise respond in this case, the Court accepts as true the facts as alleged in the Amended Complaint.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

## II.   PROCEDURAL HISTORY

Plaintiff filed this action on October 10, 2018.  ECF No. 1.  The Complaint contains five counts: (1) breach of contract by Skyline, id. ¶¶ 89-94 ("Count I"); (2) account stated against Skyline, id. ¶¶ 95-100 ("Count II"); (3) breach of contract by BuySkyline, id. ¶¶ 101-108 ("Count III"); (4) breach of contract by the Affiliated Facilities, id. ¶¶ 109-15 ("Count IV"); and (5) claims against Defendants for failure to pay Perishable Agricultural Commodities Act ("PACA") trust funds pursuant to 7 U.S.C. § 499e(c), Compl. ¶¶ 116-28 ("Count V").[3]

Plaintiff seeks damages in the amount of the unpaid invoices, plus applicable interest, as well as an award of attorney's fees and costs.  Id. at 27-28; see also Peterson Decl. ¶¶ 49-51, ECF No. 106.1.  On January 31, 2019 and February 1, 2019, Plaintiff requested that the Clerk of the Court enter default against the Affiliated Facilities and Skyline, respectively, see ECF Nos. 83, 85, which the Clerk entered on February 7, 2019.  On October 15, 2019, Plaintiff requested, and the Clerk entered, default against BuySkyline.  ECF No. 104.  Plaintiff filed the instant Motion for Default Judgment on October 21, 2019.  ECF No. 106.

## III.   LEGAL STANDARD

The Court has discretion to enter a default judgment, but a decision on the merits is preferred.  See Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008).

Before entering default judgment, the Court must determine whether: (1) it has jurisdiction over both the subject matter and parties; (2) the defendant has been properly served; (3) the complaint sufficiently pleads a cause of action; and (4) the plaintiff has proved damages.  See

---

[3] The Complaint also contains a sixth count against individuals who were dismissed by stipulation pursuant to a settlement agreement.  See Compl. ¶¶ 129-36 ("Count VI"); ECF No. 113 (ordering dismissal of certain parties).

3

Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008). Although the Court accepts facts pled in the Complaint as true for the purpose of determining liability, the plaintiff must prove damages. See Comdyne I, 908 F.2d at 1149.

Additionally, prior to entering a default judgment, the Court must make explicit factual findings as to: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

## IV. ANALYSIS

### A. Jurisdiction & Service

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because: (1) US Foods is a citizen of the states of Delaware and Illinois, and none of the Defendants are citizens of either of those states; and (2) the matter in controversy exceeds $75,000, exclusive of interest and costs. Compl. ¶¶ 4-73. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Count V raises a federal question under PACA, see id. ¶¶ 116-28, and Counts I-IV "derive from a common nucleus of operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); see also Compl. ¶¶ 89-115.

The Court has personal jurisdiction over Skyline and BuySkyline because their principal place of business is in New Jersey. See Compl. ¶¶ 2-3; Daimler AG v. Bauman, 571 U.S. 117, 118 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."). The Court has personal jurisdiction over the Affiliated Entities because they have had sufficient "minimum contacts" with New Jersey since they were managed by Skyline and BuySkyline from New Jersey, and Skyline and BuySkyline

4

entered into the relevant Customer Account Applications from New Jersey. See Compl. ¶¶ 6-73, 77-79; Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) ("Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation . . . arise[s] out of or relate[s] to those activities.'") (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

Finally, Defendants were properly served with the Complaint. See ECF Nos. 3-42, 45-54, 57-72, 75, 76, 81, 87, and 91.

### B.  Liability

Because Defendants have not filed an answer or otherwise responded to the Complaint, the Court accepts the truthfulness of Plaintiff's well-pled allegations as to liability. Comdyne I, 908 F.2d at 1149. Counts I through IV involve breach of contract claims against Defendants,[4] see Compl. ¶¶ 89-115, and Count V involves a PACA trust claim against Defendants, id. ¶¶ 116-28. The Court considers the Counts in turn.

#### 1.  Breach of Contract (Counts I-IV)

Because Section 5 of the Customer Account Applications contains a choice of law provision for Delaware, the Court assesses the contract claims under Delaware law. See Compl., Ex. A, ECF No. 1.1. To state a breach of contract claim under Delaware law, a plaintiff must show "1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." H-M Wexford LLC v. Encorp., Inc., 832 A.2d 129, 140 (Del. Ch. 2003).

---

[4] Count II contains an account stated claim against Skyline. Where, as here, an account stated claim is based on invoices, the analysis is identical to that under a breach of contract claim. See, e.g., Maersk Line v. TJM Int'l Ltd. Liab. Co., No. 18-11668, 2019 WL 2865402, at *5 (D.N.J. July 3, 2019); East Coast Advanced Plastic Surgery v. Aetna, Inc., No. 17-13676, 2018 WL 3062907, at *3 (D.N.J. June 21, 2018). Accordingly, the Court's analysis for Count II follows that of Counts I, III, and IV.

Here, Plaintiff has satisfied all three elements. The Customer Account Applications and associated invoices evince a contractual relationship between Plaintiff and Defendants. <u>See</u> Compl. Ex. A, Section 4 (noting that Defendants agreed to "pay all charges" incurred under each invoice). The Complaint sufficiently alleges that Plaintiff performed under the contracts by delivering the food products and that Defendants breached the contracts by failing to pay for these goods. <u>See</u> Compl. ¶¶ 76-77, 80-83, 88-115. Finally, Plaintiff has proven damages in the following amounts via affidavits:

- Skyline, in the amount of $478,003.28;
- BuySkyline, in the amount of $237,395.06;
- Atlantic, in the amount of $22,293.28;
- Auburndale, in the amount of $15,540.92;
- Bella Vista, in the amount of $6,286.98;
- Black Hills, in the amount of $4,612.22;
- Chase County, in the amount of $2,733.12;
- Clark Care, in the amount of $1,183.92;
- Covington, in the amount of $5,220.55;
- Downs, in the amount of $3,945.60;
- Edwardsville, in the amount of $6,577.64;
- El Dorado, in the amount of $5,740.29;
- Eskridge, in the amount of $3,467.35;
- Fort Smith, in the amount of $565.79;
- Groton, in the amount of $1,420.44;
- Ipswich, in the amount of $1,816.33;

- Kaw River, in the amount of $3,843.77;
- Lake Norden, in the amount of $2,947.21;
- Lansing, in the amount of $4,059.56;
- Laurel Pointe, in the amount of $17,487.38;
- Madison, in the amount of $2,965.00;
- Meadowbrook, in the amount of $5,977.07;
- Milbank, in the amount of $5,792.71;
- Mobridge, in the amount of $2,758.59;
- Neodesha, in the amount of $3,759.91;
- Park Place, in the amount of $2,338.10;
- Parkway, in the amount of $3,363.89;
- Pierre, in the amount of $4,461.55;
- Pittsburg, in the amount of $5,379.95;
- Prairie Hill, in the amount of $6,380.48;
- Reading, in the amount of $838.30;
- Redfield, in the amount of $2,889.85;
- Rosemont, in the amount of $11,072.46;
- Salem, in the amount of $4,368.12;
- Spring Hill, in the amount of $4,874.45;
- Stenton, in the amount of $11,763.97;
- Wakefield, in the amount of $4,811.13;
- Watertown, in the amount of $1,692.67;
- Wellington, in the amount of $5,643.33;

- Wichita, in the amount of $4,335.08; and

- Wilson, in the amount of $3,658.34.

See Gunter Decl. ¶ 12 & Exs. A-C, ECF Nos. 106.47-50.[5]  Accordingly, Plaintiff has sufficiently stated a claim against Defendants on Counts I-IV.

### 2. PACA Trust

Count V alleges that Plaintiff is entitled to payment from Defendants' PACA trusts (the "PACA Trusts") pursuant to 7 U.S.C. § 499e.

PACA "gives produce sellers a secured interest in proceeds and goods deriving from the sold produce by creating a statutory floating, non-segregated trust in their agreements with purchasers." Gargiulo v. Foodland Distributors Inc., No. 16-2379, 2016 WL 5791401, at *2 (D.N.J. Sept. 29, 2016).  The PACA Trust is "created where the seller's invoice contains the requisite statutory language demonstrating the seller's 'intent to preserve the trust.'" Id. (quoting 7 U.S.C. § 499e(c)(4)).  Here, the Complaint alleges that Plaintiff sold Defendants agricultural products covered by PACA and that Plaintiff's invoices contained the requisite statutory language to invoke a PACA trust.  See Compl. ¶¶ 117-23.  As previously noted, the Court accepts the Complaint's allegations as true, but Plaintiff must prove damages.  See Comdyne I, 908 F.2d at 1149.

Plaintiff claims that it is entitled to payment from the PACA Trusts in the amount $21,923.92 from Skyline and $7,519.80 from BuySkyline.  See Compl. ¶¶ 124-25.  Because the

---

[5] The Court notes that the amounts listed above vary slightly from the proposed order submitted in conjunction with Plaintiff's Motion, see ECF No. 106.46, and detailed in paragraphs 49-51 of the Peterson Declaration, see ECF No. 106.1.  This discrepancy is because, when determining damages, the Court relied on the amounts listed in the exhibits to the Gunter Declaration, ECF Nos. 106.48-50, because those exhibits included information about each unpaid invoice.

declarations accompanying Plaintiff's Motion for Default Judgment provide no basis for these damage amounts, Plaintiff is not entitled to default judgment against Defendants on Count V.

### C. Appropriateness of Default Judgment

Before entering a default judgment, the Court must additionally consider: (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default. Doug Brady, 250 F.R.D. at 177. First, the Court concludes that in the absence of any responsive pleading and based upon the facts alleged in the Complaint, Defendants do not have a meritorious defense. See Ramada Worldwide Inc. v. Courtney Hotels USA, LLC, No. 11-896, 2012 WL 924385, at *5 (D.N.J. Mar. 19, 2012).

Second, Plaintiff will suffer prejudice absent entry of default judgment, as it would have no other means of obtaining relief, and this matter has been pending for nearly two years.

Third, Defendants' continued failure to respond to the Complaint—which contains allegations of serious financial injuries resulting from the breach of contract—satisfies the culpable conduct standard. See Mrs. Ressler's Food Prod. v. KZY Logistics LLC, 675 F. App'x 136, 142 (3d Cir. 2017) (finding that "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard").

### D. Attorney's Fees

Finally, Plaintiff requests an award of attorney's fees. See Peterson Decl. ¶ 50. The Customer Account Applications provide that Defendants "agree[d] to pay all costs of collection incurred by [Plaintiff], including reasonable attorneys' fees and expenses." See Customer Account Applications, Section 4.

9

"The starting point for this Court's determination of a reasonable attorney's fee necessary to collect any balance due is the calculation of the lodestar amount." Spectrum Produce Distributing, Inc. v. Fresh Marketing, Inc., No. 11-6368, 2012 WL 2369367, at *3 (D.N.J. June 20, 2012) (internal quotation marks and citation omitted). The lodestar is a calculation of the hours spent on the litigation times a reasonable hourly rate, and "[t]he party seeking an award of fees has the burden to provide evidence supporting the hours worked and rates claimed." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). "To the extent the affidavit leaves any doubt as to the amount of fees to be awarded, these doubts shall be resolved against an award of fees." Veneziano v. Long Island Pipe Fabrication & Supply Corp., 238 F. Supp. 2d 683, 695 (D.N.J. 2002).

Here, Plaintiff seeks $60,930.33 in attorney's fees. Peterson Decl. ¶ 50. In support, Plaintiff has provided only a summary table of its monthly legal fees. See ECF No. 106.45. The summary does not detail the attorneys involved, the hours worked, the tasks performed, or the billing rate for the services rendered. This scant record is insufficient for the Court to conduct a meaningful inquiry into the reasonableness of the fee requested. See, e.g., Spectrum Produce, 2012 WL 2369367, at *3-11 (setting reasonable attorney's fee award by reviewing billing records for "time reasonably expended" versus "billing for unnecessary tasks," "overbilled tasks," and "tasks that should have been performed by specialized or cost-effective actors"). As such, Plaintiff's request for attorney's fees is denied without prejudice to refile.

### V.   CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment, ECF No. 106 is **GRANTED** as to Counts I-IV and **DENIED** without prejudice as to Count V. Additionally, Plaintiff's request for attorney's fees is **DENIED** without prejudice. Plaintiff may file a renewed

application regarding Count V and/or attorney's fees that details, via affidavit, the basis for the amounts requested. An appropriate Order follows.

**Date: May 14, 2020**

>*/s Madeline Cox Arleo*_____
>**Hon. Madeline Cox Arleo**
>**United States District Judge**